**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

―――――――――――――――――――――

JAIME LONDONO,                          :
                                                       :
                        Plaintiff,            :              Hon. Dennis M. Cavanaugh
                                                       :
            vs.                                     :                   **OPINION**
                                                       :
NORTHERN NEW JERSEY           :
TEAMSTERS BENEFIT PLAN,      :              Civil Action No.: 05-CV-04102 (DMC)
                                                       :
                        Defendant.          :

―――――――――――――――――――――

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon motion for summary judgment by Defendant Northern New Jersey Teamsters Benefit Plan ("NNJ Plan") to dismiss Plaintiff Jamie Londono's ("Londono") claim for benefits.  No oral argument was held pursuant to Federal Rule of Civil Procedure 78.  For the following reasons, NNJ Plan's motion for summary judgment is **granted**.

**I. Background**

NNJ Plan is a multi-employer "employee benefit plan" established in collective bargaining between Local 11, I.B.T. and certain other participating unions and employers. (Statement of Undisputed Material Facts ("Statement of Facts") at ¶ 1; Declaration of Robert Eaton ("Eaton Decl.") at ¶ 2).  NNJ Plan is maintained pursuant to an Amended and Restated Agreement and Declaration of Trust ("Trust Agreement").  (Exhibit ("Ex.") 1, attached to Eaton Decl.).  The Trust Agreement grants NNJ Plan's trustees "full authority to determine eligibility requirements for benefits."  (Eaton Decl. at ¶ 6; Ex. 1 at 16).  The Plan D summary plan description also states that the trustees have broad authority to interpret the individual plans' terms and the Trust Agreement.  (Eaton Decl. at 7; see also Ex. 2, attached to Eaton Decl., at 1-

1

2).  NNJ Plan provides hospitalization, medical, and other benefits to employees covered by collective bargaining agreements.  (Statement of Facts at ¶ 4; Eaton Decl. at ¶ 4).  These collective bargaining agreements require that contributions are made on the employee's behalf to NNJ Plan.  (Id.).  NNJ Plan offers several benefit plan levels.  (Id.).  The plan participant's employer's collective bargaining agreement determines the participant's benefit plan level.  (Id.).  A plan participant is entitled to only those benefits listed in his or her plan.  (Statement of Facts at ¶ 6; Eaton Decl. at ¶ 7).

Londono was eligible for coverage under NNJ Plan's "Plan D" level of benefits.  (Statement of Facts at ¶ 5; Eaton Decl. at ¶ 5).  The Plan D summary plan description sets forth procedures for submitting claims for benefits and appealing denied claims.  (Eaton Decl. at ¶ 8; Ex. 2 at 87-100).  Under Plan D's appeals procedure, claimants must submit appeals in writing within 180 days of receiving notice of NNJ Plan's decision on a claim.  (Eaton Decl. at ¶ 8; Ex. 2 at 95).  Written appeals must contain the following information: (1) name(s) and address(es) of patient and participant; (2) participant's Horizon identification number; (3) date(s) of service; (4) claim number; (5) provider's name and address; and (6) why the participant believes NNJ Plan's decision was incorrect.  (Ex. 2 at 95-96).  If NNJ Plan's trustees return an unfavorable decision on appeal and the participant has fully exhausted the appeals process, the participant may file a lawsuit within twelve months of the final notice denying benefits.  (Ex. 2 at 99).

In his complaint, Londono does not list the dates when he received medical services and the medical providers that rendered the services.  (See Complaint).  Londono only mentions that NNJ Plan suspended payments for an MRI and a back specialist (Id.).  NNJ Plan does not have any record of any appeal filed by Londono with respect to any claims for benefits prior to the commencement of this action.  (Eaton Decl. at ¶ 9).

2

## II. <u>Standard of Review: Summary Judgment</u>

Under the Federal Rules of Civil Procedure, summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56.  Rule 56(e) requires that the non-moving party set forth specific facts showing a genuine issue for trial when a motion for summary judgment is made. <u>Id.</u>; <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  Only disputes over facts that might affect the outcome of the lawsuit will preclude the entry of summary judgment. <u>Anderson</u>, 477 U.S. at 247-248.

The burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>see</u> <u>Adickes v. S.J. Kress & Co.</u>, 398 U.S. 144, 157 (1970).  An issue is "genuine" if a reasonable jury could possibly hold in favor of the non-moving party with regard to that particular issue.  <u>Anderson</u>, 477 U.S. at 247-248.  In deciding a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party and must resolve any reasonable doubt as to the existence of a genuine issue of material fact against the moving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## III.  <u>Analysis</u>

In this action, NNJ Plan asserts that Londono's claims must be dismissed because: (1) Londono's state law claims are preempted by ERISA; and (2) Londono failed to exhaust the administrative remedies outlined in Plan D's summary plan description.  For the following reasons, NNJ Plan's motion for summary judgment is granted.

**A.  Londono's State Law Claim is Dismissed Because it is Preempted by ERISA**

Courts generally determine whether a state action is preempted by a federal statute by examining Congressional intent.  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985); Malone v. White Motor Corp., 435 U.S. 497, 504 (1978).  The United States Supreme Court determined that one of ERISA's main objectives was to eliminate state regulation of employee benefit plans.  See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990); Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981) (stating that ERISA "establish[ed] pension plan regulation as exclusively a federal concern").  ERISA provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a).  It has been stated that ERISA's preemption provisions were "deliberately expansive."  Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46 (1987); see also Keystone Chapter, Associated Builders & Contractors v. Foley, 37 F.3d 945, 954 (3d Cir. 1994) (stating that "[t]he preemption clause of ERISA is notable for its breadth).

As it was originally proposed, ERISA only preempted "state laws relating to the specific subjects covered by [the Act]."  Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 98 (1983) (quoting H. R. Conf. Rep. No. 93-1280, p. 383 (1974); S. Conf. Rep. No. 93-1090, p. 383 (1974).  However, the Conference Committee rejected the narrow preemption clause and concluded that ERISA's "pre-emptive scope [should be] as broad as its [current] language."  Id.  Representative Dent stated that ERISA's "crowning achievement" was placing the sole power to regulate the field of employee benefit plans in the hands of the federal government.  Pilot Life, 481 U.S. at 46 (citing 120 Cong. Rec. 29197 (1974)).  Also, Senator Williams opined that ERISA preemption

4

"eliminat[es] the threat of conflicting or inconsistent State and local regulation of employee benefit plans." Pilot Life, 481 U.S. at 46 (citing 120 Cong. Rec. 29933).

The key inquiry in the preemption analysis is determining whether a state law "relates to" an ERISA-governed plan.  See also Ingersoll-Rand Co. v. McClendon, 498 U.S. at 138-139; Keystone Chapter, 37 F.3d at 954-955.  A state law will "relate to" an ERISA-governed plan "even if the law is not specifically designed to affect such plans, or the effect is only indirect." Pilot Life, 481 U.S. at 47.  The United States Supreme Court has held that "only state laws that relate to benefit plans are pre-empted."  Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 23 (1987).  In addition, the Third Circuit determined that a state law claim appealing a plan administrator's eligibility decision is preempted by ERISA.  DiFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 448 (3d Cir. 2003).  Because Londono's state law claim for benefits effectively appeals an administrator's eligibility decision, Londono's claim for benefits is preempted by ERISA and, therefore, dismissed.  In the interest of completeness, the Court will address NNJ Plan's remaining argument.

**B. Londono's Claim is Dismissed Because He Failed to Exhaust the Administrative Remedies Outlined in the Summary Plan Description**

Generally, a court will not hear an ERISA claim unless the claimant has exhausted the administrative remedies available under his or her plan.  Harrow v. Prudential Ins. Co., 279 F.3d 244, 249  (3d Cir. 2002); Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990); Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889, 892 (3d Cir. 1986); Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 185 (3d Cir. 1984).  Exhaustion of administrative remedies is required

> to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a

nonadversial method of claims settlement; and to minimize the costs of claims settlement for all concerned.

Harrow, 279 F.3d at 249; Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980).

A claimant will be excused from exhausting his or her administrative remedies if he or she could prove that following the administrative review process would be futile. Harrow, 279 F.3d at 249; Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990). The futility exception is extremely narrow and will only be met if the claimant provides a "clear and positive showing of futility. Harrow, 279 F.3d at 249; see also Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 419 (6th Cir. 1998) (stating that in order meet the futility exception, the claimant must be certain that his or her claim will be denied on appeal, "not merely that he doubts that an appeal will result in a different decision") (quoting Lindemann v. Mobil Oil Corp., 79 F.3d 647, 650 (7th Cir. 1996)); Tomczyscyn v. Teamsters, Local 115 Health & Welfare Fund, 590 F. Supp. 211, 216 (E.D. Pa. 1984) (stating that a claimant must show a fixed policy of appeal denials at the administrative level in order to meet the futility exception).

In making a futility determination, a court will generally weigh several factors, including "(1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile." Harrow, 279 F.3d at 250; See Berger, 911 F.2d at 916-917.

In addition to the futility exception, a claimant is not required to exhaust his or her administrative remedies if his or her claims "arise from violations of substantive statutory provisions." Harrow, 279 F.3d at 252 (quoting Zipf, 799 F.2d at 891). Generally, claims that

6

qualify for the <u>Zipf</u> exception fall into one of two categories: "(1) discrimination claims under § 510 of ERISA, or (2) failure to provide plaintiffs with summary plan descriptions." <u>Harrow v. Prudential Ins. Co.</u>, 76 F. Supp. 2d 558, 566 (D.N.J. 1999); <u>See</u> <u>Cohen v. Gross, Sklar & Metzgar</u>, 703 F. Supp. 388, 390 (E.D. Pa. 1989).

Here, Londono failed to exhaust his administrative remedies, outlined in Plan D's summary plan description. According to the summary plan description, any appeal must be made in writing within 180 days after receiving notice of the denial of a claim for benefits. (Ex. 2 at 95). There is no evidence in the record indicating that Londono has ever filed an appeal with NNJ Plan's trustees. Since there is no evidence in the record indicating that Londono diligently pursued administrative relief prior to commencing this action or that NNJ Plan has a fixed policy of denying claims on appeal, Londono does not qualify for the futility exception. Furthermore, since Londono was provided with a summary plan description that outlined in detail the administrative appeals process and his rights related to the review process, Londono does not qualify for the <u>Zipf</u> exception. Because Londono failed to exhaust his administrative remedies prior to commencing this action, Londono's claim is dismissed.

### IV.  <u>Conclusion</u>

For the foregoing reasons, NNJ Plan's motion for summary judgment is **granted**. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          August 2, 2006
Original:      Clerk's Office
cc:            All Counsel of Record

7